UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN GREEN, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:20-cv-10241-IT |
| | * |
| D2L LTD. and JOHN BAKER, | * |
| Individually, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

January 27, 2021

TALWANI, D.J.

Before the court is Defendants' Motion to Dismiss for Failure to State a Claim [#23]. Defendants seek dismissal on the pleadings of Counts III and IV of Plaintiff's Amended Complaint [#17]. For the reasons set forth below, the motion is DENIED.

I. Facts Alleged in the Complaint

Plaintiff Susan Green is a resident of Massachusetts. Am. Compl. ¶ 1 [#17]. D2L, Ltd. ("D2L"), a foreign corporation, is organized under Maryland law and licensed to do business in Massachusetts. Id. ¶ 2. John Baker ("Baker," collectively with D2L as "Defendants") is the President of D2L and resides in Ontario, Canada. Id. ¶ 3.

In or about September 2015, D2L—a company that sells software used by educational institutions—hired Green to work as a salesperson. Id. ¶¶ 8–9 [#17]. D2L paid Ms. Green on a commission basis. Id. ¶ 9. Under D2L's Brightspace Sales Compensation General Plan Provision Guide (the "Plan"), effective January 1, 2017, to January 31, 2018, Green's commission was based on an Annual Contract Value commission rate multiplied by Green's Annual Contract Value as defined in the Plan. Id. The Plan also included Green's Individual Goal Sheet. Id.

On June 21, 2017, Green received a call from Maura Theriault, informing her that Green's sale of software to Southern New Hampshire University ("SNHU") met the criteria of a "Windfall" as set forth in the Plan. Id. ¶ 10; see also Defs.' Reply Ex. A [#38-1].[1] Theriault informed Green that her commission was going to go before D2L's Compensation Review Board and that D2L's "executive team" was going to review and sign off on any incentive payments. Am. Compl. ¶ 10 [#17]. Only executive management may invoke the "Windfall" provision according to Section 5.1 of the Plan. Id. ¶ 11; see also Defs.' Reply Ex. A [#38-1]. Theriault also orally advised Green that she believed Green's commission would total around $550,000. Am. Compl. ¶ 10 [#17].

On June 23, 2017, President Stephen LeBlanc of SNHU signed off on Green's sale, effectively closing the transaction and "rendering Ms. Green entitled to her earned commission." Id. ¶ 12. Executive management did not invoke the "Windfall Clause" before the transaction closed. Id. ¶ 13. Ms. Green alleges that she had earned "definitely determinable commissions of $595,000.00 based upon her successful sales of educational software to Southern New Hampshire University." Id. ¶ 14. Green alleges that on or about June 23, 2017, she also had "earned definitely determinable commissions of [] approximately $6,000.00 based upon her successful sales of educational software to Roger Williams College and Springfield College." Id. ¶ 16.

On or about July 14, 2017, about 3 weeks after the sale went through, D2L's executive management invoked the "Windfall" provision and withheld her commission. Id. ¶¶ 13, 15. Green alleges that D2L also removed her from the SNHU account, "depriving her of the

---

[1] The "Windfall" provision, which Defendants attached to their reply brief, generally states that in cases where the amount of a commission falls into one of four categories, "the Company, in its sole discretion, reserves the right to pay commission on a nonstandard basis and/or adjust quotas." Ex. A to Defs.' Reply [#38-1].

opportunity to earn further commissions known as accelerators," and that D2L also prevented her from "upselling" which Green alleges was "traditionally allowed" for "most if not all other similarly-situated salespersons to pursue from new customers, in this case, SNHU, for a period of time after their procurement of and/or closing of a sale." Id. ¶ 20.

Green resigned in October of 2017. Id. ¶ 18. Green alleges that D2L has paid Ms. Green approximately $237,000 of her $595,000 SNHU commission and none of the $6,000 commission on the Roger Williams College and Springfield College software sales. Id. ¶¶ 14–17. She claims that D2L owes her $358,151.26 in commissions related to the SNHU sale, and $6,000.00 for her commissions related to the Roger Williams and Springfield College sales, totaling $364,151.26 in commissions and wages owed to her. Id. ¶ 19.

## II.   Legal Standard

In order for a complaint to survive a motion to dismiss, the well-pleaded facts in the complaint must contain "enough factual detail" to "state a claim to relief that is plausible on its face." Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (dismissing a complaint because plaintiffs did not "nudge[] their claims across the line from conceivable to plausible"). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must first "distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court must then "determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable.'" Garcia-Catalan, 734 F.3d at 103 (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

   III.   Discussion

Plaintiff's amended complaint includes four counts against the Defendants: non-payment of wages under Mass. Gen. Laws ch. 149, §148 (Count I); breach of contract (Count II); unjust enrichment (Count III); and, breach of the implied covenant of good faith and fair dealing (Count IV). Am. Compl. ¶¶ 21–41 [#17]. Defendants move to dismiss Counts III and IV. The court addresses Defendants' arguments as they relate to the two counts in turn.

   a.   Count III – Unjust Enrichment

Relying on Shaulis v. Nordstrom, Inc.'s holding that "a party with an adequate remedy at law cannot *claim* unjust enrichment," 865 F.3d 1, 16 (1st Cir. 2017) (emphasis added), Defendants argue that Plaintiff's claim for unjust enrichment fails because she has an adequate remedy at law: her breach of contract claim. Defs.' Mem. 4 [#24]. Plaintiff counters that due to the "ambiguous nature of the contract provisions," it would be premature at this stage of the proceeding to determine if there is an adequate remedy at law. Pl.'s Opp'n 8 [#28]. She relies, *inter alia*, on Lass v. Bank of Am., N.A.'s holding that "[a]lthough . . . damages for breach of contract and unjust enrichment are mutually exclusive, it is accepted practice to pursue both theories at the pleading stage." 695 F.3d 129, 140 (1st Cir. 2012) (internal citations omitted).

The parties' dueling arguments identify facially conflicting language from the First Circuit in Shaulis and Lass as to the availability of equitable remedies, at least at the pleading stage, where a plaintiff also seeks a remedy at law. However, Shaulis and Lass can be reconciled. As the First Circuit recently explained in Tomasella v. Nestle USA, Inc., a district court may not dismiss a claim for unjust enrichment simply on the basis that a plaintiff also seeks a claim for breach of contract. Instead, the district court must first ascertain whether there is ambiguity in the contract that "casts doubt on whether a breach of contract claim was indeed available as a legal remedy for the plaintiff." Id. This may, the First Circuit advised, require discovery so as to

"develop the factual record more fully" in those cases where there is ambiguity as to the contract's applicability to the claims at issue. Id.; see also Salls v. Digital Fed. Credit Union, 349 F. Supp. 3d 81, 89 (D. Mass. 2018) ("the First Circuit permitted equitable claims to survive a motion to dismiss when the contract at issue did 'not explicitly address' some of the claims made by the plaintiff in that case") (quoting Lass, 695 F.3d at 140).

Here, Plaintiff asserts that she entered into a binding contract with D2L. Am. Compl. ¶ 27 [#17]. She also argues that she is owed her earned commissions *as set forth in the contractual agreement between her and D2L*, see id., ¶ 9, and that D2L "was unjustly and unfairly enriched by the amount of the unpaid wages as well as any profits they have made as a result of Ms. Green's work," id., ¶ 35. In large part, Plaintiff does not appear to allege that Defendants were unjustly enriched through conduct falling outside the scope of the contract, but rather she alleges that the commissions she is owed are "definitely determinable commissions," id., ¶¶ 14, 16, and the amount she is owed is determinable based on her compensation plan, id., ¶ 8. Taken together, these aspects of Plaintiff's case point toward dismissal of the unjust enrichment claim since the essence of Plaintiff's allegations is that Defendants breached their contract and Plaintiff is owed remuneration per the terms of that agreement.

However, there are other allegations in the amended complaint that may fall outside of the contractual agreement. Plaintiff also alleges that Defendants' improperly invoked a "windfall clause" and also that she was "removed from the SNHU account depriving her of the opportunity to earn further commissions known as accelerators, as well as from 'upselling,' which D2L had theretofore traditionally allowed most if not all of other similarly-situated salespersons to pursue from new customers." Id. ¶¶ 11, 13, 20. Based on the record presently before the court, these allegations may support a claim that defendant was enriched by conduct falling outside the scope of the contractual arrangement. Thus, as in Tomasella, it is unclear whether "a breach of contract

5

claim [i]s indeed available as a legal remedy" for all of the allegations set forth in the amended complaint and thus Plaintiff's unjust enrichment claim is not subject to dismissal at this stage of the proceeding. 962 F.3d at 84.

### b. Count IV – Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants also move to dismiss Count IV of the amended complaint, which alleges that Defendants breached the implied covenant of good faith and fair dealing in Ms. Green's employment contract by enforcing its terms arbitrarily so as to deny Ms. Green her earned and/or almost earned commissions. Am. Compl. ¶ 39 [#17]. Defendants counter that Plaintiff has failed to allege that she was terminated in bad faith, which they contend to be a necessary element of any employment-related good faith and fair dealing claim. As set forth below, Defendants' argument is unpersuasive.[2]

"Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract." Robert Reiser & Company v. Scriven, 130 F. Supp. 3d 488, 495 (D. Mass. 2015) (citing UNO Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004)); Anthony's Pier Four, Inc. v. HBS Assocs., 411 Mass. 451, 473 (1991) ("Every contract is subject to an implied covenant of good faith and fair dealing"). The doctrine provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." Anthony's Pier Four, 411 Mass. at 471–72. However, this implied doctrine may not be "invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship." Scriven, 130 F. Supp. 3d at 495.

The crux of Defendants' argument is that, in a good faith and fair dealing claim in the context of an employment dispute, a plaintiff must show that she has been terminated. Defs.'

---

[2] Plaintiff also argues that even if termination is a required element, she has adequately pleaded that she was constructively discharged. Pl.'s Opp'n 13–16 [#28]. The court does not need to reach this argument at this time.

Mem. 5–6 [#24]. Defendants' argument relies on a series of cases where courts have noted that termination of employment is one element of an employment-based good faith and fair dealing claim. Id. (collecting cases). However, the cases cited by Defendants concern the narrow context of claims seeking remuneration for alleged bad faith termination of an at will employee (i.e., employee-plaintiffs had argued that it was their *termination* that constituted a breach of the implied covenant). Indeed, in the one case cited by Defendants where the plaintiff was not claiming wrongful termination, Lelio v. Marsh USA, Inc., the court dismissed the good faith and fair dealing claim only after finding that the plaintiff had presented no evidence that the employer had "deprived him of any income he reasonably earned or to which he was entitled." See No. CV 15-10335-MLW, 2017 WL 3494214, at *10–11 (D. Mass. Aug. 14, 2017). As the Massachusetts Supreme Judicial Court noted in Fortune v. National Cash Register Co., the good faith and fair dealing doctrine in the case of employment claims exists to "prevent overreaching by employers and the forfeiture by employees of benefits almost earned by the rendering of substantial services." 373 Mass. 96, 105 (1977); see also Uproar Co. v. National Broad. Co., 81 F.2d 373, 377 (1st Cir. 1936) (noting that the doctrine ensures that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract"). In light of the stated purposes of the doctrine, it would make little sense to limit employment-based good faith and fair dealings claims to termination claims where a plaintiff could otherwise show that his rights to the fruit of the contractual arrangement had been injured by the employer's conduct. See also Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 289 n.9 (2007) ("We reject the defendants' argument that a claim for violation of the covenant of good faith and fair dealing in the context of an employment relationship may never exist absent an allegation of a 'bad faith' termination").

Once that argument has been put to the side, Plaintiff has sufficiently alleged a claim that Defendants may have breached the implied covenant of good faith and fair dealing in their contract with Plaintiff. Plaintiff alleges that, after withholding her commissions from the SNHU sale, D2L also removed her from the SNHU account, therefore denying her the opportunity to earn further commissions on the account. Am. Compl. ¶ 20 [#17]. Plaintiff also alleges that after allowing Ms. Green to close the sale to SNHU, D2L improperly invoked the windfall provision. Id. ¶ 13. Either of these allegations, taken in the light most favorable to the Plaintiff given the early stage of these proceedings, may ultimately support a claim that Defendants deprived Ms. Green of the "fruits of her labor already substantially earned," i.e., her successful closing of the SNHU account. Further, Plaintiff may be able to show that by these actions, Defendants "unfair[ly] leverag[ed] the contract terms to secure undue economic advantage." Christensen, 360 F. Supp. 2d at 226. Thus, while Plaintiff's claims may ultimately come up short on the merits, Plaintiff's amended complaint is not subject to dismissal on the pleadings.

IV.  Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss for Failure to State a Claim [#23] is hereby DENIED.

IT IS SO ORDERED.

Date:  January 27, 2021                                   /s/ Indira Talwani
                                                          United States District Judge